# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**

v.

**MARIA COTTO-ORTIZ, et al,**

**Defendants.**

Crim. No. 16-779 (ADC)

## **OPINION & ORDER**

Before the Court is defendant Maria Cotto-Ortiz's ("Cotto") motion to dismiss specific counts against her, **ECF No. 46**, her supplementary brief in support thereof, **ECF No. 73**, and her motion requesting severance, **ECF No. 61**. Also pending before the Court is defendant Natanel Pacheco-Martínez's ("Pacheco") motion requesting severance. **ECF No. 48**. The government filed responses to all of the pending motions. **ECF Nos. 53, 57, 65, 74**. For the following reasons, the Court **DENIES** the motion to dismiss, **ECF No. 46**, and both motions to sever, **ECF Nos. 48, 61.**

**I.   Background**

Cotto faces thirty-two charges, arising out of a series of events that allegedly occurred while she was a supervisor at the Ceiba Branch of Oriental Bank ("the Bank"). Specifically, Cotto is charged with five counts of theft, embezzlement, or misapplication by a bank officer or employee under 18 U.S.C. § 656 (counts 1–5); eleven counts of bank fraud under 18 U.S.C.

§ 1344(2) (counts 6–13 and 25–28); twelve counts of making a false entry in a book, report, or statement of a federally-insured bank under 18 U.S.C. § 1005 (counts 14–22 and 29–31); two counts of aggravated identity theft under 18 U.S.C. § 1028A (counts 23 and 24); and one count of exceeding authorized access of a protected computer under 18 U.S.C. § 1030(a)(4) (count 32). **ECF No. 5**. Pacheco is charged with one count of accessory after the fact under 18 U.S.C. § 3 (count 33). *Id.*

According to the indictment, sometime in 2006, Cotto approached the victims, AMC and GTL, with an investment opportunity through the Bank. *Id.* at 2. On or around July 10, 2006, the couple accepted the investment offer by opening checking and savings accounts with an initial deposit of $160,000. *Id.* Cotto allegedly waited on the couple at the Bank, issued them "a passbook in which she hand-wrote records of transactions in their account, including deposits, interest and balance," and "instructed AMC and GTL to ignore printed statements from Oriental that they would receive in the mail every month, and to bring those to her unopened. AMC and GTL complied with this instruction . . . ." *Id.*

The couple made additional deposits over the years, through October 3, 2011, "often at the request of [Cotto]." *Id.* The indictment describes several instances in which Cotto allegedly accepted deposit money from AMC and GTL and recorded the deposit in their Bank passbook, but did not actually deposit the sums with the Bank, instead retaining the funds for her personal use. *Id.* at 3–8. The indictment also describes several instances in which Cotto completed a withdrawal slip on behalf of AMC and GTL without their consent, using the couple's

identification information to complete the withdrawal, and retaining the funds for her personal use. *Id.* at 9–10. In total, Cotto is charged with embezzling upwards of $389,986.33 from AMC and GTL. *Id.* at 5. Pacheco is charged as an accessory after the fact for allegedly offering $500 of his own money as a lulling payment to AMC and GTL on or around February 27, 2012, with the intent of concealing or delaying detection of Cotto's crimes. *Id.* at 3, 15.

In addition, throughout this same time period, the indictment alleges that Cotto stole money from the Bank and concealed her theft by fraudulently reporting the Bank's ending balance and the next-day's opening balance on a number of occasions. *Id.* at 11–15. In total, Cotto is charged with stealing approximately $249,600 from the Bank. *Id.* at 11.

Cotto now moves to dismiss counts 6, 10–12, 14–17, 25–28, and 29–31, under Federal Rule of Criminal Procedure 12(b)(3)(B). **ECF No. 46** at 4. Both defendants also seek to sever the charges so that counts 1–24 and count 33, involving AMC and GTL, are tried separately from counts 25–32, involving the Bank's ledgers. **ECF Nos. 48, 61**.

## II. Applicable Law

### A. Motion to Dismiss

An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged"—though an indictment's "count[s] may allege that the means by which the defendant committed the offense are unknown." Fed. R. Crim. P. 7(c)(1). "An indictment need not say much to satisfy these requirements—it need only outline 'the elements of the crime and the nature of the charge so that the defendant can prepare a

defense and plead double jeopardy in any future prosecution for the same offense.'" *United States v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018) (quoting *United States v. Guerrier*, 669 F.3d 1, 3 (1st Cir. 2011)). Thus, "an indictment that tracks a statute's terms is legally sufficient if the indictment itself gives the defendant adequate notice of the charges she must meet." *Id.* Moreover, "[t]he government need not recite all of its evidence in the indictment." *Id.* (alteration in original) (citation and internal quotation marks omitted).

When reviewing a defendant's motion to dismiss an indictment, the reviewing court "must not inquire into the sufficiency of the evidence underlying the indictment," rather, the court must consider "'whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" *Id.* (quoting *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012)). Likewise, "a court must deny a motion to dismiss if the motion relies on disputed facts." *Id.*

### B. Motion to Sever

Rule 8 of the Federal Rules of Criminal Procedure provides that an indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Civ. P. 8(a). Likewise, the rule provides that an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately." *Id.* R.

8(b). However, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." *Id.* R. 14(a).

### III. The Motion to Dismiss

Cotto seeks dismissal of specific, enumerated counts, raising different arguments for different sets of counts. The Court addresses Cotto's arguments in turn.

#### A. The Bank Fraud Counts 6, 10–12

Cotto challenges counts 6, 10, 11, and 12, which charge her with bank fraud under 18 U.S.C. § 1344(2) as failing to state an offense. **ECF No. 46** at 4–6. Section 1344(2) penalizes "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice" "to obtain any of the moneys, funds, credits, assets, securities, or other property *owned by*, or *under the custody or control of, a financial institution*, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344(2) (emphasis added).

Counts 6, 10, 11, and 12 allege that, on four separate dates, Cotto "accepted a deposit" "for the bank account of AMC and GTL, fraudulently asserting by" making an "entry" or "writing the deposit in AMC and GTL's Oriental passbook, and accepting the funds, that she had deposited the amount at the Ceiba [B]ranch of Oriental and had entered the record into Oriental's computer or recordkeeping, when in fact she had not," in violation of 18 U.S.C. § 1344(2). **ECF No. 5** at 5–7. According to Cotto, the indictment fails to state an offense in these counts because the funds at issue "were neither bank property, nor in the custody of the bank"

inasmuch as the funds were never actually deposited. **ECF No. 46** at 5. The couple brought the money to the Bank for deposit, handed the money to Cotto as the Bank employee, and Cotto kept the money, never transferring possession of it to the Bank. According to Cotto, this may constitute theft from the couple, as alleged in counts one through five, but it does not constitute fraud on the Bank. *Id.* at 6.

This argument is unavailing. Cotto's seemingly circular logic turns on whether her acceptance of AMC and GTL's deposit at the Bank, in her capacity as a Bank supervisor, can satisfy the element of "owned by, or under the custody or control of, a financial institution." *See* 18 U.S.C. § 1344(2). This argument challenges the sufficiency of the evidence. And, as stated above, "courts must not inquire into the sufficiency of the evidence underlying the indictment." *See Stepanets*, 879 F.3d at 372 (noting that courts should also "reject arguments that embrace technical niceties at the expense of common sense"). Accordingly, dismissal on this ground is denied.

  **B.**  **The False Entry Counts 14–17, 29–31**

Next, Cotto challenges counts 14–17 (the passbook counts) and counts 29–31 (the ledger counts) as failing to state an offense under 18 U.S.C. § 1005. **ECF No. 46** at 6–7, 9. Section 1005 penalizes an employee of a federally insured bank who "makes any false entry in any book, report, or statement of such bank, company, branch, agency, or organization with intent to injure or defraud such bank, company, branch, agency, or organization, or any other company, body politic or corporate, or any individual person." 18 U.S.C. § 1005.

The passbook counts allege that, on four different dates, Cotto, "with intent to defraud, recorded a deposit" in "AMC and GTL's [Bank] passbook, which entry was false because the amount was not deposited at the Ceiba [B]ranch of Oriental, nor was it entered into Oriental's computer or recordkeeping," in violation of 18 U.S.C. § 1005. **ECF No. 5** at 8. Cotto argues that these counts fail to state a claim because the couple's passbook does not constitute a bank record under section 1005 and the indictment otherwise indicates that the Bank's records accurately reflected the amount of money the couple had in their account. **ECF No. 46** at 7.

This argument turns on a factual determination. Cotto does not cite any binding precedent that specifically excludes a passbook from the statute, only cases from other jurisdictions that suggest it may not constitute a bank record. **ECF No. 46** at 6–7. And, according to First Circuit precedent, section 1005 is violated when a bank's records are "'made to represent what is not true or does not exist.'" *United States v. Sheehy*, 541 F.2d 123, 129 (1st Cir. 1976) (quoting *United States v. Darby*, 289 U.S. 224, 226 (1933)). Where, as here, the passbook is intended to reflect the Bank's ledger, the discrepancy between the two records may demonstrate a fraudulent entry in one or fraudulent omission in the other. *See id.; United States v. Cordell*, 912 F.2d 769, 773 (5th Cir. 1990) (holding that "an omission of material information qualifies as a false entry" under section 1005, particularly omissions intended to deceive the bank); *United States v. Krepps*, 605 F.2d 101, 109 (3rd Cir. 1979) (same). Cotto's arguments for dismissal of the passbook counts are denied as fact-based.

The ledger counts allege that on three separate occasions, Cotto, as a Bank employee, "knowingly made false entries in [the Bank's] general ledger records" with the intent to defraud and deceive. **ECF No. 5** at 14. Specifically, the counts allege that Cotto recorded "on a general ledger credit slip" an opening balance that differed from the previous day's closing balance slip, which she also prepared. **ECF No. 5** at 14–15. Cotto contends that any such discrepancy in the opening and closing balances of the working fund is insufficient to constitute a false entry, particularly because the entries may have accurately reflected the ledger's balance when the slips were completed.

Cotto's argument attacks the merits of the allegations and seemingly turns the statute on its head. Under these facts, Cotto's argument renders the key to liability on these counts the timing of when money was stolen in relation to when the ledger slips were completed. In other words, if Cotto stole the funds after entering the evening's closing balance but before entering the next-day's opening balance, then none of the entries were technically false, precluding liability under section 1005.

The mathematical accuracy of the entries in the ledgers does not absolve Cotto under the statute for omitting the pertinent tidbit that the math adds up as a result of a dubious, unreported transaction, namely, theft. *See Sheehy*, 541 F.2d at 129 (explaining that section 1005 is violated when a bank's records are "made to represent what is not true or does not exist" (citation and internal quotation marks omitted)). A balanced ledger provides the "'assurance'" that a bank's records accurately reflect "'its true condition.'" *Id.* (quoting *Darby*, 289 U.S. at 226). The

government asserts that the ledger entries at issue communicate "that all the transactions of the bank have been recorded and balanced . . . and that the transactions are legitimate," but a theft, even one properly balanced on the books by the purported thief, is not a legitimate transaction. **ECF No. 57** at 10. Whether that is a successful theory of the case is for the jury to decide, not this Court on a motion to dismiss. Accordingly, Cotto's request to dismiss these counts is also denied.

### C. Bank Fraud Counts 25–28

Next, Cotto argues that counts 25–28 should be dismissed as multiplicitous, i.e., for charging a single offense as in multiple counts. **ECF No. 46** at 7–8. In making this argument, Cotto contends that the allegations in counts 25–28 constitute multiple executions of the same scheme of fraud, citing *United States v. Lilly*, 983 F.2d 300 (1st Cir. 1992). **ECF No. 46** at 7. According to Cotto, the false entries in the general ledger each constituted "an overt act to mask the theft" but "do not constitute the completion of a single scheme." **ECF No. 73** at 5–6.

"An indictment is multiplicitous and in violation of the Fifth Amendment's Double Jeopardy Clause if it charges a single offense in more than one count." *United States v. Brandon*, 17 F.3d 409, 422 (1st Cir. 1994). As stated above, the bank fraud statute penalizes "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice" "(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344(2). Under section 1344(2), "each execution of a scheme to defraud constitutes a separate indictable offense." *Brandon*, 17 F.3d at 422. "The central question for

determining multiplicity is 'whether a jury could plausibly find that the actions described in the [disputed] counts of the indictment, objectively viewed, constituted separate executions of the [bank fraud] scheme.'" *Id.* (alterations in original) (quoting *Lilly*, 983 F.2d at 303).

"A number of factors are relevant in determining whether a single or multiple executions of bank fraud have taken place, including the number of banks, the number of transactions, and the number of movements of money involved in the scheme." *Id.* (citing *Lilly*, 983 F.2d at 305). "Each time an identifiable sum of money is obtained by a specific fraudulent transaction, there is likely to be a separate execution of the scheme to defraud." *Id.*

Counts 25–28 allege that Cotto, on four separate occasions, stole money from the Bank's vault[1] and concealed the theft "by completing, presenting to the on-duty teller for signature, and submitting a general ledger credit slip, in which she represented that the correct opening working fund account balance of the [Bank] was" a lower amount than she "recorded [in the] general ledger debit of the evening of the previous business day." **ECF No. 5** at 12–13. The government contends that Cotto executed this basic scheme on four separate occasions, to steal four different sums of money from the Bank, asserting "each individual charge of bank fraud is based on a distinct act by Cotto against the bank; each document, each entry into the bank's

---

[1] Cotto argues that "[n]one of the Counts allege that [she] stole a specific sum of a money on a given date." **ECF No. 73** at 2. While the superseding indictment is not a model of clarity, the Court does not consider it so unclear as to fail to put the defendant on notice that she is being charged with stealing the amounts reflected in the ledger discrepancies on the dates alleged. *See United States v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018).

record, was a separate act of theft, a separate transaction, a separate movement of money, which occurred on a different date." **ECF No. 74** at 4–5 (emphasis omitted).

The Court agrees with the government that counts 25–28 are not multiplicitous. *See id.* at 1 n.1. The superseding indictment alleges four separate counts of bank fraud, employing the same methods but on different dates and involving different sums of money. *See Lilly*, 983 F.2d at 305 (noting "the diversity of factors entering into an evaluation of multiplicity claims under the bank fraud statute—factors such as how many banks, how many transactions, and how many movements of money are involved"). The allegations are not, as Cotto describes, a single execution of a single scheme. *Cf id.* at 303–04 (holding that "the first twenty-nine counts of the indictment" were multiplicitous because they "involve[d] only one transaction, one bank, and one sum of money"). Accordingly, this ground for dismissal is also denied.

## IV. The Motions to Sever

Both defendants filed separate motions to sever based on similar grounds. Pacheco argues that the one count against him for accessory after the fact, count 33, is related only to the acts described in counts 1–24 against Cotto, involving AMC and GTL's account, rendering counts 25–32, involving the Bank's ledgers, improperly joined and "very prejudicial" for him. **ECF No. 48** at 2–3. Specifically, Pacheco argues that "[t]he facts and offenses as to Oriental Bank by [Cotto] will spill over to [him], and highly [sic] to be used by the jury to convict him for count number 33 as to the offenses related to AMC and GTL." *Id.* at 3. Similarly, Cotto argues that counts 1–24 involving AMC and GTL were improperly joined with counts 25–32 involving the

Bank's ledgers because they detail two distinct schemes of fraud and the joinder is "unfairly prejudicial." **ECF No. 61** at 1–2.

### A. Joinder is Proper

As stated above, joinder allows the government to charge a defendant in a single indictment with separate crimes that "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "For this purpose, 'similar' does not mean 'identical.'" *United States v. Sabean*, 885 F.3d 27, 42 (1st Cir. 2018) (citation and internal quotation marks omitted). Thus, "Rule 8(a) creates a generous presumption in favor of joinder." *Id*. (citation and internal quotation marks omitted). A court considers "similarity" "based on what the government reasonably anticipated proving when the charges were lodged," and takes "into account factors such as whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred." *Id.* (citation and internal quotation marks omitted).

The government contends that the counts are properly joined because "they are of similar character" and "connected with or constitute parts of a larger common scheme or plan," focused around Cotto's "goal of embezzling and stealing funds by virtue of her position of trust and authority as a supervisor at [the Bank]." **ECF No. 53** at 3. The government asserts that "the theft from the vault and the theft from AMC and GTL are of similar character because they both depended directly on Cotto's manipulation of her position of authority within the bank, and

because they utilized similar methods." *Id.* at 4. Additionally, the government notes that "the crimes took place over the same period of time, in the same physical location, were committed by the same person, and were crimes of, or relating to, fraud and theft." *Id.* Likewise, the government predicts that overlapping testimony from the same witnesses regarding Bank procedure and protocol will be involved in prosecuting each set of counts, further supporting joinder. **ECF No. 65** at 5. And, although Pacheco and Cotto do not challenge their joinder as defendants, the government asserts that the charges against the two defendants are properly joined because "the charges against Pacheco cannot be understood by a jury without the background and context of the charges against Cotto." **ECF No. 53** at 4.

The Court agrees. Counts 1–24 and 33 are properly joined with counts 25–32 under Rule 8. The counts share a "temporal and factual commonality" that "weighs heavily in favor of allowing joinder" and the government has "a solid basis for anticipating" that all of the counts "emanated from a single plan" to use Cotto's position with the Bank to steal money. *See Sabean*, 885 F.3d at 43. Additionally, the majority of the counts challenged involve the same two statutes; counts 6–13 (AMC and GTL related) and 25–28 (Bank fraud related) are charged under 18 U.S.C § 1344(2), while counts 14–22 (AMC and GTL related) and 29–31 (Bank fraud related) involve 18 U.S.C § 1005. **ECF No. 5**.

### B. Severance is Not Warranted

Alternatively, the defendants argue that if the Court upholds joinder as proper, severance is nonetheless warranted under Rule 14 of the Federal Rules of Criminal Procedure in order to

avoid unfair prejudice. District courts are granted "wide discretion" in deciding whether severance under Rule 14 is warranted. *See United States v. Bucci*, 525 F.3d 116, 127 (1st Cir. 2008). "To merit reversal on the basis of a district court's denial of severance, a defendant must show prejudice so pervasive that a miscarriage of justice looms." *Id.* (citations and internal quotation marks omitted). "[S]everance may be appropriate when 'proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a second trial for the second offense.'" *Sabean*, 885 F.3d at 43 (quoting *United States v. Richardson*, 515 F.3d 74, 81 (1st Cir. 2008)). Of course, "[s]ome prejudice results in almost every trial in which the court tries more than one offense together," but such "[g]arden variety prejudice . . . will not, in and of itself, warrant severance," rather, a "defendant must demonstrate that the prejudicial joinder [will] likely deprive[] him of a fair trial." *Richardson*, 515 F.3d at 81.

Pacheco raises a guilt-by-association argument, suggesting that the jury may find him guilty on count 33 out of backlash over the 32 counts brought against Cotto. **ECF No. 48** at 4. Cotto asserts that severance is necessary to prevent prejudicial spillover so that the jury does not consider "evidence admissible as to one set of offenses" "to infer guilt as to the second set." **ECF No. 61** at 7. In other words, both defendants are concerned that the jury will reach a verdict founded upon impermissible character evidence. Underlying this concern are two core assumptions that neither defendant fleshes out; first, that the evidence of the AMC and GTL counts is distinct from the evidence of the Bank fraud counts and, second, that evidence of one would be inadmissible in a separate trial on the other.

Generally, "this sort of vaguely articulated prejudice [is] insufficient" to sustain a motion to sever. *See United States v. Burgos*, 254 F.3d 8, 14 (1st Cir. 2001). Moreover, while "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," this type of evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

The government argues that any potential unfair prejudice faced by both defendants as a result of the challenged joinder can be remedied by limiting instructions. **ECF Nos. 53** at 4; **65** at 6–7. The government asserts that some of the same witnesses would be necessary in separate trials, such as those who will testify as to the policies and procedures of the Bank. And the government contends that evidence supporting the different counts would be admissible in separate trials as non-character evidence of other acts that are relevant to refuting Cotto's anticipated defenses of mistake and identity. **ECF No. 65** at 8. According to the government, "Defense counsel has already indicated an intent to pursue a defense that Cotto did not steal from the vault, but rather that the general ledger entries were a mistake, or that the money disappeared at someone else's hands." *Id.* The government asserts that "Cotto has stated to law enforcement in the past that AMC took money out of her and her husband's joint bank account without her husband's knowledge, which is a defense of identity." *Id.* In response, the

government argues that "Cotto's history of altering bank records is probative of absence of mistake and identity." *Id.*

The Court agrees with the government. The counts share similarity of time, place, and method, and are suggestive of an overarching modus operandi to utilize Cotto's privileges as a Bank supervisor to circumvent Bank protocol and avoid detection. Likewise, the anticipated defenses by Cotto of mistake and identity indicate that evidence of one set of allegations may be admissible in a separate trial on the other set of allegations. Pacheco's claim of prejudice is similarly unpersuasive, describing the attenuated possibility that the jury will be so inflamed by the multitude of counts against *Cotto* that it will find *him* guilty by association. **ECF No. 48** at 3. Yet, Pacheco does not seek severance on the basis that the one count against him should be tried separately from the counts against Cotto, just that less counts against Cotto should be tried in conjunction with the one count against him.

Both defendants have presented "vaguely articulated" claims of prejudice that are "insufficient" to sustain a motion to sever. *See Burgos*, 254 F.3d at 14. The Court is convinced that any unfair prejudice resulting from the joinder of these counts can be mitigated with appropriate limiting instructions, such as an instruction to "consider each count separately." *See United States v. Ponzo*, 853 F.3d 558, 568 (1st Cir. 2017) (citation and internal quotation marks omitted). Such "prophylactic measures" are generally considered sufficient to reduce the risk of unfair prejudice in cases where multiple counts are charged together. *See United States v. Natanel*, 938

F.2d 302, 308 (1st Cir. 1991). Accordingly, the defendants' motions for misjoinder and severance are denied.

**V. Conclusion**

The motion to dismiss and the motions to sever, **ECF Nos. 46**, **48**, **61**, are **DENIED**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 2nd day of August, 2018.

                                           **S/AIDA M. DELGADO-COLÓN**
                                           **Chief United States District Judge**